ROBERT A. CHAISSON, Judge.
[ ¡/This is a suit for personal injuries sustained when Salvadore Tramuta fell on the defendants’ property as the result of an allegedly defective condition of that property. Mr. Tramuta’s wife, Joan M. Tra-muta, appeals a summary judgment dismissing the suit, which was granted in favor of the defendants.[1] Upon de novo review, for the following reasons, we vacate the trial court’s grant of summary judgment and remand the matter for further proceedings.
FACTS AND PROCEDURAL HISTORY
Lakeside Plaza, L.L.C. (“Lakeside”) is the owner of a strip shopping mall that houses approximately eight stores, including Jeffs Haberdashery. The mall is constructed such that all eight stores front on a raised, covered walkway, from which customers can step down into the parking lot, which runs the entire length of the mall. The parking lot contains demarcated parking spaces that front on, and are perpendicular to, the raised walkway. Additionally, each parking space contains a yellow parking bumper fixed in place and parallel to the raised walkway. Over time, due to soil subsidence under the parking lot, the difference in elevation between the parking lot and the raised walkway increased to the point where it |spresented a problem for customers to step up to, or down from, the raised walkway. In response, in 2005, Lakeside had a single concrete step, 285 feet in length and running almost the entire length of the mall, added to the front of the raised walkway, to enable customers to enter (or exit) the mall directly from (or to) the parking lot by taking two shorter steps up (or down), rather than one higher one. When Lakeside had the step added, it did not relocate the stationary parking bumpers away from the step, resulting in the amount of level stepping space between the parking bumpers and the raised walkway being reduced by the width of the added step.
In 2008, Mr. Tramuta was leaving Jeffs Haberdashery holding a clothing bag over his shoulder with his left .hand, and reaching into his pocket for his car keys with his right hand, when he fell while descending from the raised walkway to the parking lot. Mr. Tramuta sustained serious personal injuries in this fall.
The Tramutas filed suit against Lakeside alleging that a defective condition of its premises caused Mr. Tramuta’s fall.[2] Specifically, Mr. Tramuta’s theory of his case is that while utilizing the added step to descend from the raised walkway to the parking lot, “the front of his foot was wedged and/or snagged between a parking bumper and the step.”
Lakeside filed a Motion for Summary Judgment arguing that Mr. Tramuta is unable to carry his burden of proof on a *778 number of elements of his claim, namely, he is unable to prove what caused him to fall, he is unable to prove a defective condition in the premises, and, if such defective condition existed, he is unable to prove that Lakeside had knowledge of the condition. Lakeside further argues that if such defective condition existed, it was “open and obvious to all,” thus |4precluding recovery by the Tramutas.[3] The trial court granted Lakeside’s Motion for Summary Judgment. It is from this judgment that Mrs. Tramuta appeals.[4] For resolution of this appeal, we only address Mrs. Tramu-ta’s assignments of error that the trial court erred in finding no genuine issues of material fact and therefore erred in granting Lakeside’s Motion for Summary Judgment.
DISCUSSION
This Court, in Int’l Ass’n of Heat & Frost Insulators v. Paternostro, 13-1006 (La.App. 5 Cir. 05/28/14), 142 So.3d 284, 287-288, recently set forth the standards upon which courts grant and review summary judgments, to-wit:
A summary judgment is appropriate when there remains no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. Zeringue v. O’Brien Transp., Inc., 05-760 (La.App. 5 Cir. 4/11/06), 931 So.2d 377, 379, writ denied, 06-1107 (La.9/1/06), 936 So.2d 205. Summary judgments are favored in the law and the rules should be liberally applied. Id. The summary judgment procedure shall be construed to accomplish the ends of just, speedy, and inexpensive determination of allowable actions. Id.
Appellate courts review a judgment granting a motion for summary judgment on a de novo basis. Gutierrez v. State Farm Fire & Cas. Ins. Co., 13-341 (La.App. 5 Cir. 10/30/13), 128 So.3d 509, 511. Thus, this Court uses the same criteria as the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Id.
Procedurally, the court’s first task on a motion for summary judgment is determining whether the moving party’s supporting documents' — pleadings, depositions, answers to interrogatories, admissions and affidavits are sufficient to resolve all material factual issues. Murphy v. L & L Marine Transp., Inc., 97-33 (La.App. 5 Cir. 5/28/97), 695 So.2d 1045, 1047 (citing La. C.C.P. art. 966(B)). To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been | .^excluded any real doubt as to the existence of a genuine issue of material fact. Id. In making this determination, the *779 mover’s supporting documents must be closely scrutinized and the non-mover’s indulgently treated. Id. Since the moving party bears the burden of proving the lack of a material issue of fact, inferences to be drawn from the underlying facts before the court must be viewed in light most favorable to the non-moving party. Id.
If the court determines that the moving party has met this onerous burden, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Murphy, supra. Louisiana Code of Civil Procedure article 967 outlines the non-moving party’s burden of production as follows:
When a motion for summary judgment is made and supported ..., an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
Summary judgment is appropriate when all the relevant facts are mar-shalled before the court, the marshalled facts are undisputed, and the only issue is the ultimate conclusion to be drawn from those facts. Id.
A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. Luther v. IOM Co. LLC, 13-0353 (La.10/15/13), 130 So.3d 817, 822. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id. Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Id.
The Tramutas have alleged that a defective condition of Lakeside’s premises caused Mr. Tramuta’s fall. Thus, the substantive law applicable to this case is that found in La. C.C. art. 2317 and 2322. Article 2317 states “[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by ... the things we have in our custody.” Article 2322 specifically modifies liability | milder article 2317 with respect to the owner of a ruinous building or a defective component part of that building. Article 2322 provides, in pertinent part:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice of defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice of defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care ...
Under article 2322, a plaintiff must prove the following elements to hold the owner of a building liable for the damages caused by the building’s ruin or a defective component: (1) ownership of the building; (2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect; (3) the damage could have been prevented by the exercise of reasonable care; (4) the defendant failed to exercise such reasonable care; and (5) causation. La. C.C. art. 2322; Broussard v. State, 12-1238 *780 (La.4/5/13), 113 So.3d 175, 182-183.[5] Additionally, our jurisprudence requires that the ruinous building or its defective component part create an unreasonable risk of harm. Id. at 183, citing Entrevia v. Hood, 427 So.2d 1146, 1148-49 (La.1983).
Lakeside, in its Motion for Summary Judgment, contends that there are no genuine issues of material fact, and that the allegedly undisputed facts establish that the Tramutas will be unable to prove either causation, a defective condition in the premises that presented an unreasonable risk of harm, or defendants’ knowledge of such condition.

JjCausation

Neither party has identified any witnesses who observed Mr. Tramuta’s fall. Therefore, the only evidence by which plaintiff can establish what caused his fall will be the testimony of Mr. Tramuta himself. Inasmuch as Mr. Tramuta is now deceased, the only evidence available from Mr. Tramuta is his deposition and affidavit testimony.
Lakeside refers this Court to testimony in Mr. Tramuta’s deposition in which, in response to questions regarding the cause of his fall, he responded that he did not know what caused him to fall. Although Lakeside refers to excerpts of the deposition, those excerpts are not the entire discussion in the deposition regarding the cause of Mr. Tramuta’s fall. In response to questioning regarding causation, the testimony was as follows:
Q. Okay. How did you fall?
A. I tripped on something, you know, either the bumper or between the bumper.
Q. Okay.
A. Between the steps and the bumper I think it was.
Q. I am just trying to understand what happened to you and why you fell. Was there any foreign object that was not a part of the parking lot or a part of the steps that would have caused your fall?
A. No. Other than the bumper and the steps, no.
Q. Okay. What, if anything, caused you to fall?
A. I don’t know. I mean, my foot got caught on something, and I think it was the bumper. I think I tripped over the bumper.
And later in his deposition he stated that “[i]t could have been all of the above,” (referring to the step and the bumper).
|sWhile it is accurate that at various times in his deposition Mr. Tramuta expressed doubt as to the exact mechanism of his fall, he also expressed his belief that his foot became caught “between the steps and the bumper,” which testimony supports his theory of how he fell. It is not the function of this Court on de novo review of a summary judgment to judge the credibility of witnesses’ statements and accept one version of the events over another. Rather, it is our function to determine whether sufficient contradictory facts are put forth such that a genuine issue of material fact remains. After de novo review, we find that a rational trier of fact could accept Mr. Tramuta’s testimony that his foot became caught between the step and the parking bumper, thus potentially establishing the cause of his fall.
*781 Additionally, Lakeside points out that Mr. Tramuta did not establish the precise parking bumper which was involved in his fall. We note that numerous photographs of the parking area, the parking bumpers, the added step, and the raised walkway were introduced by the parties. Those photographs show a uniform step across the front of the raised walkway, with uniform parking bumpers located a uniform distance from the added step. There is no allegation that any unique characteristic of a particular parking bumper played a part in Mr. Tramuta’s fall. The theory of Mr. Tramuta’s case is that his foot was caught between the added step and one of the parking bumpers due to the reduced stepping space between the two. The photographs show that the space between the added step and each of the parking bumpers appears to be uniform for each bumper. Therefore, the fact that Mr. Tramuta did not identify the precise parking bumper, out of the few in front of Jeffs Haberdashery, upon which he alleges he fell, is not fatal to his claim.
Upon de novo review, we find that genuine issues of material fact regarding causation remain, and therefore summary judgment on this issue is not appropriate.

19Defective condition presenting unreasonable risk of harm

In its brief, Lakeside correctly states that “[bjefore one can engage in the ‘unreasonable risk of harm’ analysis, one must first determine the presence of a defective condition.” Lakeside then argues that the presence of parking bumpers in a parking lot does not constitute a defect. However, it is not the mere presence of the parking bumpers in the parking lot that is alleged to be the defective condition; rather, it is the placement of the parking bumpers in relation to the added step that together allegedly create an unreasonable risk of harm wherein a person’s foot can become caught between the two.
Lakeside presented the report of its expert, Lee R. Connell, in which he opined that the placement of the added step and parking bumpers was not a defect in the premises. The Tramutas presented the report of their expert, Michael J. Frenzel, in which he opined that the placement of the added step and the parking bumpers in relation to one another did constitute a defect in the premises.
Again, it is not the function of this Court on de novo review of a summary judgment to evaluate the relative merits of the opinions of experts and to accept one expert’s opinion over another’s. Rather, it is our function to determine whether sufficient contradictory facts are put forth such that a genuine issue of material fact remains. We find that sufficient facts are put forth in Mr. Frenzel’s report from which a reasonable fact-finder could determine that a defective condition existed in the premises.
Lakeside further argues that even if a defective condition existed in the premises, that condition did not present an unreasonable risk of harm, specifically arguing the openness and obviousness of the condition.
The latest pronouncements from our Supreme Court regarding the “open and obvious to all” doctrine are found in the case of Broussard, supra. In Broussard, a ImUPS delivery man was injured while trying to maneuver his loaded dolly into a malfunctioning elevator that had stopped one and one-half to three inches above the lobby floor. After trial, the jury found that the malfunctioning elevator presented an unreasonable risk of harm and apportioned 62% fault to the State, which owned the elevator, and 38% fault to Broussard. The Court of Appeal reversed, holding the jury’s determination that the offset created an unreasonable risk of harm was mani *782 festly erroneous. Broussard, v. State, 11-0479 (La.App. 1 Cir. 3/30/12), 2012 WL 1079182, 2012 La.App. Unpub. LEXIS 183. As part of its application of the “risk-utility balancing test,” the Court of Appeal found that the defect was open and obvious and thus did not present a serious risk of harm. Id. The Supreme Court accepted writs and framed its inquiry as follows:
In this personal injury case, we must determine whether a one and one-half to three inch misalignment between the floors of an elevator and a building’s lobby created an unreasonable risk of harm as found by the jury, or whether the elevator’s defective condition presented an open and obvious hazard as determined by the Court of Appeal.
Broussard, 113 So.3d at 178.
After reviewing the applicable law and the record in its entirety, the Supreme Court found that the jury’s unreasonable risk of harm determination was not manifestly erroneous, and therefore reversed the Court of Appeal’s decision and reinstated the District Court’s judgment rendered in conformity with the jury’s verdict. Id. at 193-194.
In discussing the analytical framework for evaluating an unreasonable risk of harm, the Court stated, “... the determination of whether a defect is unreasonably dangerous necessarily involves a myriad of factual considerations, varying from case to case ...” Id. at 185. The inquiry “encompasses an abundance of factual findings, which differ greatly from case to case, followed by an application of those facts to a less-than scientific standard ...” Id. at 186. In order to aid the [ntrier-of-fact in making this “unscientific, factual determination, [the] Court has adopted a risk-utility balancing test, wherein the fact-finder must balance the gravity and risk of harm against individual societal rights and obligations, the social utility of the thing, and the cost and feasibility of repair.” Id. at 184.
In specifically referring to the “open and obvious to all” doctrine, the Court noted that its opinion does not contain a bright-line rule because the issue has to be examined on a case-by-case, fact-driven inquiry; however its treatment of the inquiry does offer some guidance to the lower courts in addressing what the Court characterized as “this difficult area.” Id. at 181. The Court further noted Judge Whipple’s concurrence to the Court of Appeal opinion, expressing her concern that denying a victim’s recovery based on whether a defective condition should be obvious to the victim runs “perilously close to resurrecting the doctrine of assumption of the risk.” Id. We share Judge Whipple’s concerns in this regard, especially when called upon to make this fact-intensive determination in the procedural context of a motion for summary judgment.
Addressing the question of whether the potentially defective condition of the place.ment of the parking bumpers in relation to the added step was open and obvious to all, we make the following observations. Lakeside argues that the parking bumpers are painted yellow for easy observation and that one expects to encounter such parking bumpers in a parking lot. We agree. However, it is not the mere presence of the parking bumpers in the parking lot that is alleged to be the defective condition. It is the placement of the parking bumpers in relation to the added step. We note from the photographs that the added step is not painted yellow and that, due to the same coloration as the raised walkway and the parking surface, it tends to blend in with both, making its presence in relation to the parking bumpers not obvious. The Tramutas also introduced evidence through 112Andrew Allen, the contractor who constructed the step, that he *783 had given Lakeside a price to have the entire front edge of the step painted yellow for the sum-of $250.
Even though the step is visible on closer examination, the ability to view the condition is not dispositive of the “open and obvious to all” inquiry; rather, it is a question of the expectation of those encountering the condition. In Broussard, clearly a one and one-half to three inch differential in elevation would be visible upon closer inspection; however, in finding the condition not open and obvious to all, the Supreme Court noted that “the public does not ordinarily anticipate offsets between the floors of elevators and buildings” and that “pedestrians do not ordinarily anticipate irregularities, such as the offset in question, when entering and exiting elevators.” Id. at 187. Likewise, we find there to be a genuine issue of material fact as to whether the public accessing Lakeside’s premises would ordinarily anticipate the placement of parking bumpers in such proximity to the added step that the two create a “gulley” within which a. person’s foot may become caught.
Lakeside also argues that Mr. Tramuta should have been exiting the mall either at the far ends of the raised walkway or between the parking bumpers, rather than by crossing over a parking bumper. Lakeside points out that when a car is parked in a parking space, it is not possible for a pedestrian to cross over that parking bumper. So under either scenario (with or without a car present), Lakeside’s position is that a pedestrian should not be crossing over the parking bumpers; however, Lakeside’s position raises serious questions about the reason for, and the social utility of, those portions of the step being added directly in front of the parking bumpers.
Additionally, we further note that, without reiterating all of Lakeside’s strenuous arguments that there is no defective condition, those same arguments -| 1ssupport the conclusion that genuine issues of material fact remain as to whether, if it is determined that a defective condition does exist, that condition is open and obvious to all.
Upon de novo review, we find that genuine issues of material fact remain as to whether a defect exists that presents an unreasonable risk of harm regarding the placement of the parking bumpers in relation to the added step; summary judgment is therefore not appropriate on this issue.

Lakeside’s knowledge

Lakeside argues that even if a defective condition existed, it had no knowledge of that condition. The deposition of Mr. Allen, Lakeside’s contractor who added the step, was introduced into evidence. Mr. Allen testified that he recommended painting the face of the step yellow and that he gave Lakeside a price of $250 to do so. Mr. Allen also testified that he believed that he had recommended to Lakeside that they move the parking bumpers out further, but that they didn’t want to expend the cost. We find that a genuine issue of material fact remains as to whether Lakeside knew, or in the exercise of reasonable care should have known, of the potential defect in the premises. Summary judgment is therefore not appropriate on this issue.

Comparative Fault

Lastly, Lakeside has made a number of arguments regarding the potential fault of Mr. Tramuta in causing his own injuries, specifically, that he had options safer than crossing over the parking bumper in order to exit the mall, and that he was inattentive as to where he was stepping. We note that any potential fault on the part of Mr. Tramuta does not negate potential liability of the defendants *784 for an otherwise unreasonably dangerous defect, but rather must be addressed by the trier of fact through consideration of comparative fault principles.
^CONCLUSION
Upon de novo review, we find that genuine issues of material fact remain. We therefore vacate the trial court’s grant of summary judgment in favor of Lakeside and remand the matter for further proceedings consistent with this opinion.

JUDGMENT VACATED.

. Mr. Tramuta died during the pendency of this litigation.

. Lakeside's property management company and its insurer are also named as defendants. All defendants will hereinafter be collectively referred to as "Lakeside.”

. Lakeside had previously filed a Motion for Summary Judgment that was denied by the trial court. Mrs. Tramuta assigns as error the trial court’s failure to find that the second Motion for Summary Judgment was "redundant,” and therefore should not have been entertained. Based upon our reversal of- the trial court’s grant of summary judgment, we pretermit any discussion of this assignment of error.

. Subsequent to granting the Motion for Summary Judgment and the running of delays for requesting a new trial, the trial court issued a judgment, with supporting reasons, denying the summary judgment. Lakeside filed an Ex Parte Motion for Nullity, which the trial court correctly granted, reinstating the original judgment granting the summary judgment. Mrs. Tramuta further assigns as error the trial court's "reversing its decision denying the Motion for Summary Judgment,” i.e., granting Lakeside’s Motion for Nullity. Again, based upon our reversal of the trial court's grant of summary judgment, we pretermit any further discussion of this assignment of error.

. While liability for any unreasonably dangerous defect in the added step, which is an appurtenance or component part of the building, would be imposed under La. C.C. art. 2322, liability for any unreasonably dangerous condition of the parking bumper would be imposed under La. C.C. art. 2317.1, dealing with damage caused by a defect in a thing; however, the elements of proof under either article are the same.