DREW, J.
| Marilyn Loftus and her husband Lynn Loftus appeal a summary judgment granted in favor of Jody and Ronald Walker.
We affirm.
FACTS
The Walkers were interested in having a home built for them in Shreveport. They entered into a written contract with Raymond W. Davis Construction, Inc. (“RWDC”), to frame the house and to perform the carpentry work. The contract provided that RWDC was to “furnish all the labor, material, tax, and insurance” for the construction of the new residence. Raymond Davis had helped build a home for the Walkers nearly 20 years earlier, and he had performed construction work at their trucking business. Leland Kuyper was one of RWDC’s employees working on the home.
The Walkers entered into verbal contracts with other contractors including Arkla Electric, Grand Cane Plumbing, and Danny Corley Painting. Marilyn Loftus was an employee of Corley Painting.
In order to protect the finished stairs in the home from damage caused by the workers who were building the home, Kuy-per tacked cut-to-size sheets of plywood to the stairs. Marilyn alleged that when she was descending the stairs while working, a sheet of plywood came loose, which caused her to fall down the stairs and become injured.
The Loftuses filed suit against Kuyper, RWDC, and the Walkers, alleging that the Walkers were the general contractors on the project. Louisiana Workers’ Compensation Corporation filed a petition of | gintervention in the suit. In their answer to the original petition, RWDC and Kuy-per admitted that the Walkers were the general contractors. The Loftuses amended their petition to add Ohio Casualty Insurance (the Walkers’ builders’ risk insurer), State Farm (the Walkers’ renter’s insurer), and Atlantic Casualty Insurance (RWDC’s general liability insurer) as defendants.
The Walkers filed a motion for summary judgment contending that they were not liable for Marilyn’s alleged injuries because they did not supervise the employees of RWDC or Corley Painting, and were not involved in the day-to-day supervision or control of the employees. The Walkers offered excerpts from the depositions of Ronald Walker and the Loftuses in support of their motion. When the Walkers and State Farm filed an amended motion for summary judgment, they attached an excerpt from Kuyper’s deposition to their motion.
The Loftuses opposed the motions for summary judgment with the depositions of Ronald Walker and Raymond Davis, the Walkers’ written contract with RWDC, and a flow chart prepared by the Loftuses’ counsel.
The trial court granted the motions for summary judgment, determining that Ron- *966 aid Walker did not supervise or control the employees of either RWDC or Corley Painting. The trial court further noted that:
• because there was no employment relationship between the Walkers and RWDC or Corley Painting, any alleged OSHA violations did not constitute a cause of action;
• although the OSHA regulations and alleged violations could still be offered as evidence of negligence, the alleged OSHA violations were not relevant to the Loftuses’ claims as they were inapplicable to the circumstances of this case.
| ..DISCUSSION
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau 07-1726 (La.2/26/08), 977 So.2d 880. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate, ie., whether there is any genuine issue of material fact, and whether the mov-ant is entitled to judgment as a matter of law. Id.
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof on a motion for summary judgment is set forth in La. C.C.P. art. 966(C)(2):
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
|/This provision initially places the burden of producing evidence at the hearing on the motion for summary judgment on the mover, who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. Samaha v. Rau, supra; Wright v. Louisiana Power & Light, 06-1181 (La.3/9/07), 951 So.2d 1058. At that point, the party who bears the burden of persuasion at trial, usually the plaintiff, must come forth with evidence (affidavits or discovery responses) which demonstrates that he or she will be able to meet the burden at trial. Samaha v. Rau, supra; Wright v. Louisiana Power & Light, supra.
Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 00-2507 (La.12/8/00), 775 So.2d 1049.

Duty to supervise

The Loftuses argue on appeal that the Walkers are vicariously liable for the torts of the contractors they hired under a theory of respondeat superior. They also *967 contend that by acting as the general contractor on the project, the Walkers assumed the duty of supervision of the contractors and the project.
Generally, masters and employers are answerable for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed. See La. C.C. art. 2320. The concept established |sby La. C.C. art. 2320 is called “vicarious liability.” However, vicarious liability does not apply when an independent contractor relationship exists. Oliveaux v. St Francis Medical Center, 39,147 (La.App.2d Cir.12/15/04), 889 So.2d 1264, writ denied, 2005-0454 (La.4/29/05), 901 So.2d 1067.
The distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis. Tower Credit, Inc. v. Carpenter, 2001-2875 (La.9/4/02), 825 So.2d 1125.
The supreme court has found the following factors to be relevant in determining whether the relationship of principal and independent contractor exists: (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ nonexclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor’s own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. Hickman v. Southern Pac. Transport Co., 262 La. 102, 262 So.2d 385 (1972).
The most important inquiry is whether the principal retained the right to control the work. When applying this test, it is not the supervision and control actually exercised that is significant; the important question is whether, from the nature of the relationship, the right to do so exists. 6Hickman, supra; Ledent v. Guaranty Nat. Ins. Co., 31,346 (La.App.2d Cir.12/28/98), 723 So.2d 531.
Noting that the Walkers had separate contracts with RWDC and Corley Painting, the trial court recognized that this case was similar to the situation found in Pilgram v. Williford Roofing & Sheet Metal, Inc., 488 So.2d 269 (La.App. 3d Cir.1986), writ denied, 492 So.2d 1222 (La.1986), where a painter working on a home was injured when a roll of tar paper fell from the home’s roof during a renovation project. The painter sued the roofing company, construction company, and the homeowner. The painter alleged that the homeowner had a contract with the construction company as general contractor for the work being done on his home. The homeowner’s motion for summary judgment was granted.
The homeowner in Pilgram had either contracted with the construction company, and the company then contracted with a painting company and a roofing company, or the homeowner directly contracted with those companies to do the painting and roofing work. The homeowner had alleged in his answer that he had contracted with the painting and roofing companies. However, in a later affidavit, the homeowner stated he had not entered into a contract with the painting company. The court in Pilgram concluded that the issue of whether the painter was the employee of a subcontractor of a general contractor or the employee of an independent contractor of the homeowner may have been an unresolved fact, but it was not a materi *968 al fact, as the record clearly showed the homeowner was not the 17painter’s employer and had no right of control over the painter’s actions and activities.
McCoy v. Liberty Mut. Life Ins. Co., 42,118 (La.App.2d Cir.5/9/07), 956 So.2d 802, involved the construction of a new home with the homeowner acting as his own contractor. The homeowner hired a heating and air conditioning contractor and a framing contractor. The heating contractor was injured when he fell down handrail-less temporary stairs that had been constructed by the framing contractor. He filed suit against the homeowner and the framing contractor. The defendants filed motions for summary judgment, with the homeowner arguing that he was not liable for the actions of the framing contractor over whom he retained no control. The trial court granted the defendants’ motions for summary judgment. This court affirmed the summary judgment, concluding that the stairs did not present an unreasonable risk of harm to the heating contractor as the condition of the staircase under construction was necessary and served a useful purpose for the construction. Although not critical to the resolution of the case, this court wrote that the framing contractor was an independent contractor with no contractual relationship with the heating contractor.
Raymond Davis was involved in both residential and commercial construction. He had a commercial general contractors license for 15 years, but had only recently obtained a residential general contractors license because he had just learned that one was required for remodelers.
Davis was not the general contractor on the project, but considered himself to be a subcontractor of the Walkers, who had hired him to do the | ^concrete, framing, and trim work. Davis was not sure if he also did the roof. Davis stated that he had been doing concrete, framing, and trim work for 30 years.
According to Davis, he had an open-ended contract with the Walkers on this project, which meant there was nothing definite other than they were going to build a house and change things as the Walkers decided they wanted to make changes. There were many verbal provisions that went along with the written contract, which was just basically something to show the bank when the Walkers borrowed money for the project. Although the contract stated that Davis was to provide all the labor, Davis explained that he could not provide all of it since he did not have a license to completely build the home, and the Walkers were the general contractor for the job. Davis further stated that the other contractors were not supervised by him.
Davis stated that sometimes changes were made by the Walkers weekly. If the Walkers wanted something changed, he would see if it could be done and how much it would cost. Davis explained that what he meant by changes was that the Walkers would change the layout from the blueprints. This is compared to change orders, which involve changes from detailed written contracts. According to Davis, an owner making changes was very common in construction jobs.
Davis testified that in regard to his work, all of his supervision and instruction on the job came from Walker. However, he also stated that he supervised his own employees. Davis added that the Walkers may have |nasked his workers to change something minor, but Ronald or one of his employees would have called him about it.
Ronald conceded that he did not have a job foreman or general contractor who was i’esponsible for all aspects of the job. However, he stated that he hired the con *969 tractors to do their jobs and he did not supervise them. Although Ronald went to the construction site on most days, he did not go out there to provide any supervision. His wife seldom went to the site. Ronald was retired from the trucking industry, and construction work and painting had not been part of his business or occupation. Building inspectors ensured that the contractors complied with building codes. Ronald never talked to the contractors about who was in charge of safety on the job site.
Ronald did not know what type of carpenter Kuyper was. RWDC had a total of three carpenters working on the house, and Ronald was unaware of their specific responsibilities. Ronald had nothing to do with supervising the carpenters, who were paid by RWDC.
Leland Kuyper testified that he thought that Ronald was the general contractor, but then he explained that Davis was in charge and would decide what he was going to do each day. If Davis was not on site, then Kuyper would decide what to do. Kuyper stated that Ronald would not decide what was done each day, as he was just the owner.
Davis never supervised Danny Corley or his employees other than to tell Corley the work that he needed to do. Marilyn Lof-tus testified that she was paid by Danny Corley. She also stated that Danny Cor-ley instructed her [10on what to do each day, and that all of her instructions came from Danny Corley. She never received instructions from the Walkers.
The mere absence of a designated licensed general contractor does not automatically lead to the conclusion that the Walkers became general contractor by default, with all legal obligations that flow from that title. The Walkers asked for changes to building plans, but this is not unexpected from homeowners. The Walkers did not have the right to control how the employees of each contractor did their jobs. The Walkers hired each contractor to fulfill a particular duty, and left it up to them to do the job they were hired to complete. There is no genuine issue of material fact regarding whether RWDC was an independent contractor on this construction project. Therefore, the Walkers were not vicariously liable for any damages caused to the Loftuses by the negligence of RWDC’s employees. The motion for summary judgment was properly granted.

OSHA regulations

The Loftuses contend that the Walkers had separate and distinct duties owed to their employees and agents under OSHA regulations, and the violations of these regulations caused harm to Marilyn.
OSHA regulations govern only employers and employees and do not create a private cause of action by a non-employee. Manchack v. Willamette Industries, Inc., 621 So.2d 649 (La.App. 2d Cir.1993), writ denied, 629 So.2d 1170 (La.1993). However, a plaintiff may offer a statute or regulation as evidence of a defendant’s negligence even when that statute or regulation cannot be used to establish negligence per se. Id.
|nThe Loftuses merely cite various OSHA regulations in their brief and provide little in the way of argument on this issue. In any event, the OSHA regulations cited by the Loftuses are not relevant to the Walkers. Any alleged violations of the OSHA regulations are relevant to the liability of RWDC, not the Walkers.
DECREE
At the Loftuses’ costs, the judgment is AFFIRMED.