WICKER, J.
Plaintiff, Raymond Falcon, appeals the granting of summary judgment in favor of defendants, Dr. Jeffrey Surcouf and State Farm Fire & Casualty Insurance Company. For the following reasons, we find that genuine issues of material fact exist and that summary judgment is not appropriate in this case. Accordingly, we reverse the trial court judgment and remand this matter for further proceedings.
FACTUAL AND PROCEDURAL BACKGROUND
This is a suit for personal injuries sustained by plaintiff-plumber, Raymond Falcon, while performing plumbing work during the construction of a new home owned by defendant Dr. Jeffrey Surcouf and insured by State Farm. On September 22, 2014, plaintiff filed suit in the 24th Judicial District Court for the Parish of Jefferson against Dr. Surcouf and State Farm alleging that, on December 4, 2013, while performing plumbing work at the home, he fell from the landing of a staircase leading to the second floor which lacked a temporary stair railing, resulting in serious personal injuries.
In his petition, plaintiff alleged that Dr. Surcouf acted as his own general contractor on the construction project and failed to exercise reasonable care in keeping the premises free from unreasonably dangerous conditions and defects. Plaintiff alleged that Dr. Surcouf, as owner of the home and the individual acting as the general contractor during the home's construction, is liable to plaintiff for his injuries. On June 25, 2015, plaintiff filed a supplemental and amending petition to name as additional defendants, Juan Valladares, Sr., the framing subcontractor, and Rick Golemi, who plaintiff identified as the "on-site manager" for the construction project.[1] In his supplemental petition, plaintiff alleged that Valladares was responsible for the construction of the staircase and should have *718 constructed a temporary railing for the safety of other workers. Plaintiff further alleged that Golemi, in the exercise of reasonable care, should have noticed that the stairs lacked a temporary handrail during the construction and remedied the unsafe condition. Plaintiff contended that all defendants violated Occupational Safety and Health Administration (OSHA) regulations, which requires an "alternative fall protection" plan for residential construction projects.
After the parties conducted sufficient discovery, defendants Dr. Surcouf and State Farm moved for summary judgment.[2] Defendants argued that (1) the lack of a handrail on the stairs at issue was an open and obvious condition for which defendants are not responsible; (2) there is no evidence to show that Dr. Surcouf knew or should have known about the need for a handrail; (3) OSHA regulations concerning handrails only apply between employers and employees and, thus, do not apply in this case; (4) Dr. Surcouf, as the homeowner, is not responsible for any negligence or actions of subcontractor Valladares; (5) Dr. Surcouf, as homeowner, is not responsible under respondeat superior for Golemi's actions because Golemi was not his employee; and (6) a homeowner constructing his own private residence is not held to the same regulatory standards as a licensed general contractor and Dr. Surcouf owed no duty to plaintiff under the facts of this case.
In support of their motion for summary judgment, defendants attached Dr. Surcouf's deposition testimony. Dr. Surcouf testified that he purchased a lot of land in Metairie to construct a home and that he obtained a policy of builder's risk insurance with defendant, State Farm. He did not retain a general contractor for the construction. Dr. Surcouf testified that he is a neonatologist and has never acted as a general contractor prior to this project. He testified that he visited the house very often, nearly every day, to check on the progress of construction. He further testified that his cousin, Rick Golemi, acted as a site supervisor, and his mother, Sue Surcouf, handled administrative work in connection with the project.
Dr. Surcouf contracted individually with multiple companies to act as subcontractors for various work to be completed on the home. He testified that he previously used Continental Plumbing, plaintiff's company, years prior when he built a home in Kenner and, further, that plaintiff performed plumbing work for Dr. Surcouf's family construction business for years. When Dr. Surcouf built his home in Kenner, he used the family business, Golemi Homes, as the general contractor, to build the home.[3]
*719 Dr. Surcouf testified that he also contracted with Valladares, the framing contractor, to frame the entire exterior and interior of the home. Dr. Surcouf did not have a formal contract with Valladares. Rather, Valladares submitted a proposal/bid for the work, which was addressed to Golemi's attention.[4] If Dr. Surcouf had any issue with the framing, he would contact Valladares directly. He does not recall a temporary railing present prior to the accident at issue but testified a temporary railing was installed within approximately one week after the accident.[5] Dr. Surcouf testified that he was unaware of any requirement to have a temporary stair railing during construction and would have relied on Valladares to construct any staircase required by local rules. He testified that he is aware generally that a stair railing must be installed prior to a final Parish inspection to occupy the home.
In his deposition, Dr. Surcouf recalled an issue where plaintiff wanted to begin the interior plumbing work before Valladares finished the interior framing. Dr. Surcouf testified to his belief that plaintiff discussed the issue with either Golemi or his mother Sue Surcouf and that plaintiff was allowed to enter the residence sooner than anticipated in light of plaintiff's upcoming scheduled knee surgery.[6]
In further support of their motion for summary judgment, defendants attached the deposition of Golemi, who testified that he has a general contractor's license under his company name Rick Golemi Construction, LLC. Golemi testified that at some point Dr. Surcouf asked him if he would be the general contractor on the home construction project. Golemi told Dr. Surcouf that, as general contractor, he charges a 20% fee, which would have been significant given the size of Dr. Surcouf's home. He explained to Dr. Surcouf that, if he served as the general contractor for the project, he would be responsible to warranty certain component parts of the house, such as the foundation, for five to ten years by law. Golemi testified that he felt obligated, essentially, to help Dr. Surcouf build the home and stated, "you're my cousin. Your dad and your grandpa and your uncle taught me how to do this." He testified that he and Dr. Surcouf agreed on a rate of $35.00 per hour for his time to supervise the construction. Golemi testified that he attempted to stop at the house every day, but was most certainly at the site four days per week. Typically, he worked between six and fifteen hours per week on the job, and would verbally relay his hours to Sue Surcouf or Dr. Surcouf to get paid.
Golemi described Sue Surcouf as a "superintendent" of the project, who had more decision making authority than he did. He testified that Sue Surcouf visited the construction project approximately three to four times per week to observe the progress. Golemi testified that all subcontractors, including plaintiff, had their own construction keys to the house because the family's construction business, Golemi Homes, had known most of the subcontractors for years and the same construction *720 key lock was used on many construction projects.[7]
Golemi testified to the order in which home construction typically progresses. He stated that in all jobs on which he is the general contractor, the framing contractor finishes first, then places the temporary stair railing to the second floor, and thereafter the other subcontractors begin work. Although Golemi testified that Sue Surcouf was responsible for the scheduling of subcontractors, he also indicated that he was involved in the scheduling, stating "I had Ray [plaintiff] scheduled" after Valladares. Golemi explained that plaintiff began work eight days sooner than scheduled and that "we were not ready for him." Golemi recalled a phone call from Valladares asking why plaintiff was at the house prior to the framing completion. Golemi stated that he told Sue Surcouf that she could tell plaintiff to enter the home to begin "roughing in" the kitchen downstairs because the framing was complete in that area.
Concerning his relationship with Dr. Surcouf, Golemi testified that Dr. Surcouf did not provide him any tools for his job; he did not control what hours Golemi worked or went to the house; he did not hire any of the subs; he did not pay the sub; or material suppliers; and the checks he received from Dr. Surcouf were personal checks paid to him directly out of a personal checking account tied to the construction account.
Plaintiff filed an opposition to defendants' motion for summary judgment, arguing that genuine issues of material fact exist as to whether Golemi was Dr. Surcouf's employee and whether Dr. Surcouf would be responsible under a theory of respondeat superior for Golemi's negligence in failing to notice and remedy the lack of a temporary stair railing when, from his experience as a general contractor, he knew that a temporary stair railing should be present prior to other subcontractors beginning work. Plaintiff further argued that the question of whether the condition of the staircase at issue is an open and obvious risk of harm is fact-intensive and not proper on summary judgment.
In support of his opposition to defendants' motion for summary judgment, plaintiff attached Valladares' deposition testimony, wherein he stated that he understood that Golemi was the general contractor on the job at issue because he primarily dealt with Golemi on the project. Valladares testified that at the time of plaintiff's fall, he had completed approximately 95% of the interior framing work in the home and, further, that he had in fact installed a temporary safety railing at some point prior to the accident at issue. He testified that he typically installs the temporary rail before any other subcontractors begin work. He testified that, to his knowledge, there was never a time where the temporary handrail was not present during the construction.
Plaintiff also attached the deposition of Sue Surcouf, who testified that she is Dr. Surcouf's mother and that she handled mostly secretarial work during the home's construction, such as answering phone calls and ordering materials. She testified that a handrail was never placed on the stairs between the first and second floor prior to plaintiff's fall. She testified that, approximately one week before the accident, she asked Valladares to construct a temporary balcony railing on the second floor, which overlooked the first floor, because *721 her grandchildren planned to come visit to see the progress of the home and she felt it was unsafe to not have a balcony railing on the second floor. She testified that she went up and down the stairs on many occasions without a handrail from the first to second floors, as did Dr. Surcouf, his wife, and their children "in hand," and did not request a handrail for those stairs.
In further opposition to defendants' motion for summary judgment, plaintiff attached the affidavit of Mr. Edward Fogarty, an expert in the field of estimation and project management. Mr. Fogarty attested that the general contractor is responsible for maintaining a safe working environment for his employees as well as the subcontractors involved in the construction. He attested that the person acting as the general contractor is generally responsible for scheduling the sequence of subcontractors performing work, and that scheduling is one of the most important jobs on a jobsite because the incomplete task of one subcontractor can create a risk for other tradesmen beginning work. He further stated that OSHA requires a guardrail or safety net for work taking place above six feet in height, and therefore, a stair handrail would have been required during the construction of Dr. Surcouf's home. Mr. Fogarty further attested that, in this case, the general contractor should not have allowed other subcontractors inside the home until the framing was complete, finding that no reasonable contractor would have allowed electrical, HVAC, and plumbing subs to begin work that required them to travel on a rail-less staircase.[8] He further attested that allowing the subcontractors to come and go as they pleased into the home and self-supervise (as testified to in this case) is an "unsafe practice." Mr. Fogarty found that had Dr. Surcouf, Golemi, and Sue Surcouf acted reasonably, plaintiff would not have been allowed to begin work and would have never fallen.[9]
On December 6, 2016, following a hearing, the trial judge granted summary judgment in favor of Dr. Surcouf and State Farm, dismissing all of plaintiff's claims against them with prejudice. On December 15, 2016, the trial judge issued written reasons for judgment. In his reasons for judgment, the trial judge found that, under the facts of this case, Dr. Surcouf did not exercise control over any of the subcontractors and, thus, was not liable for any subcontractor's negligence. Further, the trial judge found first that "Dr. Surcouf did not give express or implied authorization to an unsafe practice," and, second, that "there is no dispute that the absence of the handrail was an open and obvious condition and that plaintiff was aware of it." This timely appeal follows.
LAW AND ANALYSIS
On appeal, plaintiff assigns as error the trial court's granting of summary judgment, contending first that genuine issues of material fact exist as to whether the absence of a handrail under the facts of this case is an open and obvious hazard or risk of harm. Plaintiff also contends that the trial court erred in making a factual determination as to whether Dr. Surcouf, by providing to subcontractors construction keys to come and go freely and by *722 failing to properly schedule the sequence of subcontractors' work, authorized an unsafe practice for which he may be liable.
The legal basis for liability of a homeowner for injuries sustained by an alleged defect in the home is premised on the following Civil Code articles:
La. C.C. art. 2317 :
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
La. C.C. art. 2317.1 :
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
La. C.C. art. 2322 provides:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Under La. C.C. art. 2322, a plaintiff must prove the following elements to hold the owner of the building liable for injuries caused by the building's vice, ruin or defect: "(1) ownership of the building; (2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect; (3) the damage could have been prevented by the exercise of reasonable care; (4) the defendant failed to exercise such reasonable care; and (5) causation." Broussard v. State, through Office of State Bldgs., Div. of Admin. , 12-1238 (La. 4/5/13), 113 So.3d 175, 182-83 ; Tramuta v. Lakeside Plaza, L.L.C. , 14-410 (La. App. 5 Cir. 2/25/15), 168 So.3d 775, 779 ; Breaux v. Fresh Start Props. L.L.C. , 11-262 (La. App. 5 Cir. 11/29/11), 78 So.3d 849, 852. Our jurisprudence requires that the ruinous building or its defective component part create an unreasonable risk of harm. Broussard , 113 So.3d at 175 (citing Entrevia v. Hood , 427 So.2d 1146, 1148-49 (La. 1983) ; Olsen v. Shell Oil Co. , 365 So.2d 1285, 1292 (La. 1978) ).
To assist the finder of fact to determine whether a building's vice or defect creates an unreasonable risk of harm, the Supreme Court has adopted a risk-utility balancing test that weighs four factors: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature." Hutchinson v. Knights of Columbus, Council No. 5747 , 03-1533 (La. 2/20/04), 866 So.2d 228, 235.
Concerning the second factor of the risk-utility balancing test-the likelihood and magnitude of harm, including the obviousness and apparentness of the condition-the Louisiana Supreme Court has *723 held that a homeowner may owe no duty to protect against an open and obvious hazard. Hutchinson, supra at 234,. "If the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff. Id. In his reasons for judgment, the trial judge found Dr. Surcouf owed no duty to plaintiff because the absence of the handrail was an "open and obvious" condition. This Court has recently considered the jurisprudential "open and obvious" doctrine and stated:
The latest pronouncements from our Supreme Court regarding the "open and obvious to all" doctrine are found in the case of Broussard, supra .[10] In Broussard , a UPS delivery man was injured while trying to maneuver his loaded dolly into a malfunctioning elevator that had stopped one and one-half to three inches above the lobby floor. After trial, the jury found that the malfunctioning elevator presented an unreasonable risk of harm and apportioned 62% fault to the State, which owned the elevator, and 38% fault to Broussard. The Court of Appeal reversed, holding the jury's determination that the offset created an unreasonable risk of harm was manifestly erroneous. Broussard v. State , 11-0479 (La. App. 1 Cir. 3/30/12), 2012 La. App. Unpub. LEXIS 183[ 2012 WL 1079182]. As part of its application of the "risk-utility balancing test," the Court of Appeal found that the defect was open and obvious and thus did not present a serious risk of harm. Id. The Supreme Court accepted writs and framed its inquiry as follows:
In this personal injury case, we must determine whether a one and one-half to three inch misalignment between the floors of an elevator and a building's lobby created an unreasonable risk of harm as found by the jury, or whether the elevator's defective condition presented an open and obvious hazard as determined by the Court of Appeal.
Broussard , 113 So.3d at 178.
After reviewing the applicable law and the record in its entirety, the Supreme Court found that the jury's unreasonable risk of harm determination was not manifestly erroneous, and therefore reversed the Court of Appeal's decision and reinstated the District Court's judgment rendered in conformity with the jury's verdict. Id. at 193-194.
In discussing the analytical framework for evaluating an unreasonable risk of harm, the Court stated, "...the determination of whether a defect is unreasonably dangerous necessarily involves a myriad of factual considerations, varying from case to case ..." Id. at 185. The inquiry "encompasses an abundance of factual findings, which differ greatly from case to case, followed by an application of those facts to a less-than scientific standard ..." Id. at 186. In order to aid the trier-of-fact in making this "unscientific, factual determination, [the] Court has adopted a risk-utility balancing test, wherein the fact-finder must balance the gravity and risk of harm against individual societal rights and obligations, the social utility of the thing, and the cost and feasibility of repair." Id. at 184.
In specifically referring to the "open and obvious to all" doctrine, the Court noted that its opinion does not contain a bright-line rule because the issue has to be examined on a case-by-case, fact-driven inquiry; however its treatment of the inquiry does offer some guidance to the *724 lower courts in addressing what the Court characterized as "this difficult area." Id. at 181. The Court further noted Judge Whipple's concurrence to the Court of Appeal opinion, expressing her concern that denying a victim's recovery based on whether a defective condition should be obvious to the victim runs "perilously close to resurrecting the doctrine of assumption of the risk." Id. We share Judge Whipple's concerns in this regard, especially when called upon to make this fact-intensive determination in the procedural context of a motion for summary judgment.
Tramuta v. Lakeside Plaza, L.L.C. , 14-410 (La. App. 5 Cir. 02/25/15), 168 So.3d 775, 781-82.
The Louisiana Supreme Court in Broussard , held that "the question of whether a defect presents an unreasonable risk of harm [is] 'a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of facts." Broussard, supra at 183,. The Court went on to state that "whether a defect presents an unreasonable risk of harm is a 'matter wed to the facts' and must be determined in light of facts and circumstances of each particular case." Id. The Supreme Court has since clarified its holding in Broussard to explain that it should not be interpreted to limit or prohibit summary judgment in a case where no genuine issue of material fact exists or where the plaintiff fails to put forth any evidence to counter the motion for summary judgment pursuant to the burden-shifting mechanism provided in La. C.C.P. art. 966. See Allen v. Lockwood , 14-1724 (La. 2/13/15), 156 So.3d 650, 652-53. However, where genuine issues of material fact exist concerning whether a defect is unreasonably dangerous, summary judgment is not appropriate. Broussard, supra .
In this case, plaintiff opposed defendants' motion for summary judgment with ample evidence to show a genuine issue of material fact concerning whether the condition at issue was open and obvious as an unreasonable risk to all. The documentation submitted in connection with the motion for summary judgment reflects that Dr. Surcouf's wife and children frequently visited the home and traversed the stairs without incident. The deposition testimony further reflects that, although Sue Surcouf found it necessary to request a temporary stair railing on the second floor, she never requested a handrail on the stairs between the first and second floors-thereby inferring that she did not find that stairwell to be unreasonably dangerous for her grandchildren.
In support of their motion, defendants argued that plaintiff is solely responsible for his damages because he knew that the stairway at issue lacked a temporary handrail. However, the Louisiana Supreme Court has recently found that under certain circumstances, "to the extent plaintiff was aware of the condition..., the trier of fact may consider such evidence at trial for purposes of determining the percentage of fault, if any, to be assigned to plaintiff." Rodrigue v. Baton Rouge River Ctr , 16-2075 (La. 1/25/17), 209 So.3d 93. Thus, a plaintiff's knowledge of the condition is not a complete bar to recovery and may be a fact taken into consideration by the trier-of-fact at trial.
On appeal, plaintiff further assigns as error the trial court's failure to find that Dr. Surcouf, as the named general contractor, undertook an obligation or duty to keep the premises in a reasonably safe condition and that he breached that duty by authorizing the unsafe practice of allowing subcontractors to come and go without supervision or proper scheduling.
*725 The owner of a building is not generally liable for the actions of an independent contractor performing work on the building. "[T]he owner of a building under construction or renovation generally does not have custody for purposes of liability." Sasser v. Wintz , 11-2022 (La. App. 1 Cir. 09/04/12), 102 So.3d 842, 846 (citing Young v. City of Plaquemine , 02-0280 (La. App. 1 Cir. 5/10/02), 818 So.2d 898, 899, writ denied , 02-1601 (La. 9/30/02), 825 So.2d 1196.)[11] However, a jurisprudentially created exception to that general rule exists "when the owner exercises operational control over the contractor's methods of operation or gives express or implied authorization to unsafe practices." Id. This Court has further held that:
As a general rule neither the owner nor the general contractor are liable for the negligence of an independent contractor who performed work for them unless, as urged by the plaintiffs here: (1) the work undertaken by the independent contractor is inherently or intrinsically dangerous, or (2) the person for whom the work is performed gives express or implied authorization to an unsafe practice or has the right to or exercises operational control over the method and means of performing the work.
Meaux v. Wendy's Int'l, Inc. , 10-111 (La. App. 5 Cir. 10/26/10), 51 So.3d 778, 785-86 (citing Villaronga v. Gelpi Partnership Number 3 , 536 So.2d 1307, 1310-11 (La. App. 5th Cir. 1988) ).
In opposition to defendants' motion for summary judgment, plaintiff put forth substantial evidence showing conflicting testimony as to who in fact acted as the general contractor for this project. Further, the documentation submitted in connection with the motion for summary judgment creates a genuine issue of material fact as to who was responsible for building and installing a temporary handrail, or scheduling the sequence of subcontractors involved in the construction.[12] Moreover, plaintiff attached the affidavit of expert witness Mr. Fogarty, who attested that Dr. Surcouf, in allowing subcontractors to come and go throughout the property without proper scheduling or supervision, engaged in an "unsafe practice." Therefore, plaintiff has put forth sufficient evidence to create a genuine issue of material fact as to whether Dr. Surcouf authorized an unsafe practice throughout the construction process. The trial court erred in making a factual finding on summary judgment as to this issue.
CONCLUSION
Based upon the documentation submitted in connection with defendants' motion for summary judgment, we find that genuine issues of material fact remain and that summary judgment is inappropriate in this case. Accordingly, we reverse the trial *726 court's judgment and remand this matter to the trial court for further proceedings.
REVERSED AND REMANDED

Defendants, Dr. Surcouf and State Farm, filed an Answer to plaintiff's petition, and also filed a third-party demand against the framing subcontractor, Valladares.

Defendants Surcouf and State Farm initially filed a motion for summary judgment on July 24, 2015, which was eventually continued to allow for adequate discovery. Thereafter, the trial judge recused himself and the case was allotted to a new trial judge. On August 18, 2016, defendants re-urged their motion for summary judgment, which was reset. On August 18, 2016, Defendants' filed a supplemental memorandum in support of motion for summary judgment and rule resetting its motion for summary judgment, basically reurging/resetting their motion, contending that, since the reassignment of the case to a new division, the parties had conducted additional discovery.

Dr. Surcouf testified that his uncle, Tony Golemi, owned Golemi Homes at the time he built his Kenner home. He testified that his uncle died prior to the construction of the Metairie home at issue, and that Golemi Homes was never the general contractor for this project. From the documentation submitted in connection with the motion for summary judgment, it appears that the family business, Golemi Homes, is a separate and distinct entity from Rick Golemi Homes, L.L.C.

Dr. Surcouf testified that Golemi may have been the first person to contact Valladares to get a bid on the job because Golemi had used Valladares on past projects.

Dr. Surcouf recalled that, after the accident, he had a conversation with Sue Surcouf and Golemi and potentially other subcontractors involved at the time. He testified that the consensus from that conversation was, whether the temporary railing was required or not, to just "get it up." He testified that Golemi went to home depot and got the lumber to put up the railing and that Golemi installed the railing after plaintiff's fall.

Plaintiff also testified that he asked Golemi directly if he and his workers could enter the home to begin plumbing work at the house and was advised that he could start.

When questioned why Valladares' proposal was written to his attention rather than Dr. Surcouf's, Golemi testified that Valladares knew him as a general contractor and Valladares was probably initially confused or mistaken when he provided the proposal to him.

The deposition testimony introduced in connection with the motion for summary judgment reflects that the HVAC workers and others had been present in the home prior to the accident at issue.

Plaintiff also attached Dr. Surcouf's deposition testimony reflecting that he applied for and obtained a Jefferson Parish permit for construction of his home and listed himself as the general contractor on the construction project.

Broussard v. State , 12-1238 (La. 4/5/13), 113 So.3d 175.

In his written reasons, the trial judge found this case analogous to Loftus v. Kuyper , 46,961 (La. App. 2 Cir. 3/14/12), 87 So.3d 963, wherein the trial court found that a homeowner was not responsible for a subcontractor's negligence to a third-party resulting from a defect in a loose plywood stair, and granted summary judgment in favor of the homeowner. Loftus , however, addressed a homeowner's liability for a subcontractor's negligence that could not have been discovered by the homeowner. In this case, the negligence alleged is that of the homeowner himself, Dr. Surcouf, for authorizing an unsafe practice by failing to remedy a condition of which he was aware, in addition to the alleged liability for those he contracted with or, possibly, employed. Although there are many factual issues to be determined, including Golemi and Dr. Surcouf's employment relationship, if any, the negligence alleged is also that of Dr. Surcouf directly and, therefore, Loftus is not controlling under the facts of this case.

The documentation reflects that Golemi installed the railing after plaintiff's fall.