JOHNSON, J.
*678 Defendants/Appellants, Winn-Dixie Montgomery, L.L.C. (hereinafter referred to as "Winn-Dixie"), the Coca-Cola Company a.k.a. Louisiana Coca-Cola Bottling Company a.k.a. Coca-Cola Refreshments USA, Inc. (hereinafter referred to as "Coca-Cola"), and Jonathan Burden appeal the judgment that found them at fault for a slip and fall and awarded damages in favor of Plaintiff/Appellee, Gilda Woods, from the 29th Judicial District Court, Division "D". For the following reasons, we affirm the judgment.
FACTS AND PROCEDURAL HISTORY
The pertinent facts for this appeal are as follows:
On October 8, 2013, Jonathan Burden was employed by Coca-Cola as a Merchandiser[1] assigned to the Winn-Dixie store located on Highway 90 in Luling, Louisiana. After arriving at the store and conducting a survey of the items that needed to be restocked, Mr. Burden began the process of moving the merchandise from the warehouse to the beverage aisle and stocking the shelves. At approximately 2:24 p.m., he removed two cases of Monster Energy drinks that were on top of one of the stacks of merchandise and placed them on the floor, so he could retrieve four cases of Coca-Cola that were under the Monster Energy drinks. Mr. Burden then left the beverage aisle with the Coca-Cola cases, leaving the Monster Energy drinks on the floor[2] for approximately 30 minutes.
Meanwhile, a few customers, including Ms. Woods, traversed the beverage aisle. Ms. Woods specifically went to Winn-Dixie that day to purchase soft drinks that were on sale. While walking down the aisle, Ms. Woods pulled the shopping cart behind her with her right arm because her left arm had recently undergone rotator cuff surgery and was in a medical sling. When she found the desired drinks, Ms. Woods began to place a couple of cases in her shopping cart. A female customer also on the beverage aisle noticed Ms. Woods struggling with the drinks and offered to assist Ms. Woods. As the customer placed a case of drinks in Ms. Woods' cart, Ms. Wood took a step backward, near the Monster Energy drinks, to give the customer space. When the customer went to place a second case of drinks in Ms. Woods' cart, Ms. Woods took another step backward to avoid being hit in her left arm by the case of drinks being placed in the cart. As she stepped back the second time, Ms. Woods tripped over the Monster Energy drinks that were left on the floor by Mr. Burden.[3]
*679 An ambulance had to be called to Winn-Dixie to transport Ms. Woods to the hospital.
On July 14, 2014, Ms. Woods filed a "Petition for Damages." In her petition, Ms. Woods alleged Mr. Burden was negligent for creating an unreasonable risk of harm by leaving the Monster Energy drinks on the floor; Winn-Dixie and Coca-Cola were vicariously liable for Mr. Burden's negligence; and Winn-Dixie was liable pursuant to La. R.S. 9:2800.6 for failing to exercise a reasonable effort to keep its premises free from hazardous conditions. Ms. Woods further alleged that she sustained severe and disabling injuries and damages resulting from Defendants' negligent actions. Defendants filed a joint "Answer" to Ms. Woods' petition, denying the allegations of negligence. The matter was set for a jury trial on June 12, 2017.
At the conclusion of the trial, the jury rendered the following verdict determinations according to a preponderance of the evidence: a condition existed at the Winn-Dixie store that presented an unreasonable risk of harm and the risk of harm was foreseeable; Mr. Burden, along with Coca-Cola, was negligent in leaving the Monster Energy drinks on the floor of the aisle at Winn-Dixie; the negligence of Mr. Burden was a proximate cause of injuries to Ms. Woods. The jury further found Ms. Woods was not negligent in her conduct. The jury allocated 50% fault to Winn-Dixie and 50% fault to Mr. Burden and Coca-Cola for the injuries sustained by Ms. Woods. The jury then awarded Ms. Woods a total award of $877,102 for full and fair compensation. On June 20, 2017, the trial court adopted the jury's verdict and rendered a judgment in favor of Ms. Woods. Winn-Dixie was found liable for $438,551 in damages, and Mr. Burden and Coca-Cola were found liable for the other $438,551 in damages, together with legal interest from the date of judicial demand until paid and costs pursuant to La. C.C.P. art. 1920. The instant appeal followed.
ASSIGNMENTS OF ERROR
On appeal, Defendants assign the following errors: 1) the trial court erred in failing to properly instruct the jury on the law governing an open and obvious condition; 2) alternatively, the jury clearly erred in failing to allocate any comparative fault to Ms. Woods; and 3) in the further alternative, the jury's award of $620,000 in general damages was abusively high.
LAW AND ANALYSIS
Jury Instructions
Defendants allege the trial court erred in failing to properly instruct the jury on the law governing an open and obvious condition. Defendants argue the trial court simply buried the phrase "obviousness and apparentness" in a laundry list of other factors that the jury was to consider when making a determination as to whether the condition at issue constituted an unreasonable risk of harm. They contend that whether a condition is open and obvious is an essential, fact-based, and outcome-determinative issue, and the importance of making a factual finding as to whether the condition at issue was "open and obvious" was glossed over in a laundry list of other factors that the jury was to consider. Defendants further argue that the erroneous instructions and omission of a proper statement of the law governing open and obvious conditions by the trial court prevented the jury from adequately considering the key issue in this case, thus creating a manifest error. They request that the jury verdict be set aside and a de novo review be conducted by this Court.
Conversely, Ms. Woods maintains the trial court properly instructed the jury in *680 the instruction, and the final version of the jury instruction in question was, in substance, exacted as Defendants requested during the charge conference. She avers that the jury was properly instructed as to the risk/utility balancing test, which Defendants considered to be a laundry list, to determine whether the store's condition presented an unreasonable risk of harm. She further avers that the jury charges proposed by Defendants were inaccurate statements of the law and were properly rejected. Because the jury instruction adequately informed the jury on the law applicable to the case, Ms. Woods asserts there is no ground to reverse the jury's verdict and conduct a de novo review.
This Court, in Oregan v. Cashio , 16-563 (La. App. 5 Cir. 4/26/17), 220 So.3d 845, 849-50, provided the following law regarding jury instructions:
Louisiana Code of Civil Procedure Article 1792(B) requires that a trial judge instruct the jury on the law applicable to the case submitted to them. "The trial judge is responsible for reducing the possibility of confusing the jury and may exercise the right to decide what law is applicable and what law it deems inappropriate." Trial courts are given broad discretion in formulating jury instructions and a trial court's judgment should not be reversed so long as the charge correctly states the substance of the law.
The trial judge is under no obligation to give any specific jury instruction that may be submitted by either party; however, the judge must correctly charge the jury. The question considered on review is whether the trial judge adequately instructed the jury; specifically, whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice.
Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. When deficiencies in the jury instructions are raised on appeal, the appellate court must consider the instruction as a whole to determine if the jury charges adequately provided the correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the charges adequately guided the jury in its deliberations. If the trial court omits an applicable, essential legal principle, its instruction does not adequately set forth the issues to be decided by the jury and may constitute reversible error.
A de novo review of the record is only warranted when the jury charges are so incorrect or inadequate that the jury was barred from reaching a verdict based on the law and the facts. Otherwise, the manifest error standard of review applies to determine if the trial court erred in omitting the requested instruction.
(Internal citations omitted).
In this matter, Defendants proposed three jury instructions relating to a condition that is an unreasonable risk of harm:
DEFENDANTS' PROPOSED JURY CHARGE NO. 7
Under Louisiana law, a defendant generally does not have a duty to protect against that which is obvious and apparent. When a condition is open and obvious to all, it does not present an unreasonable danger.
DEFENDANTS' PROPOSED JURY CHARGE NO. 8
A person is deemed to have seen that which a reasonably prudent person could have seen or should have seen under the same or similar circumstances.
DEFENDANTS' PROPOSED JURY CHARGE NO. 9 *681 The degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous. A merchant is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care, or which was as obvious to a customer as it was to the merchant.
During the jury charge conference, the trial judge heard extensive arguments of the parties concerning the unreasonable risk of harm jury instructions. Defendants insisted the jury instruction give special focus to the law regarding open and obvious conditions. A reading of the transcript from the jury charge conference clearly shows the trial judge sought to fairly incorporate the proposed language of the parties with the applicable laws.[4] Ultimately, the trial judge charged the jury with the following instructions:
While a store owner is not the insurer of the safety of his customers, he owes them an affirmative duty to use ordinary care to keep the aisles, passageways, and floors in a reasonably safe condition. The duty includes reasonable inspection of the premises for defects and obstructions to passageways, and reasonable warning of perils, which the customer may not see through the exercise of ordinary care. However, a patron in a self-service store, reasonably assumes that the aisles are clear for passage and focuses on the displayed merchandise, not on the pathway.
There is no fixed rule for determining whether a condition presents an unreasonable risk of harm. To assist you in determining whether an unreasonable harm exists, you should consider and weigh the purpose which the thing served, its utility and effectiveness for that purpose, the likelihood that it would cause harm, including the obviousness and apparentness of the condition, and the severity of the harm that it was likely to cause.
* * *
In this case, the standard applicable to the Plaintiff's conduct is the requirement that she exercise that degree of care, which we might reasonably expect a person to exercise for her own safety and protection. On this issue, the Defendants have the burden of proof.
Defendants then noted their objection to the jury instructions because they failed to include their proposed wording in charges seven, eight, and nine.
The question of whether a defect presents an unreasonable risk of harm is a mixed question of law and fact that is to be determined by the trier of fact, either the jury or the court in a bench trial. Broussard v. State, through Office of State Bldgs., Div. of Admin. , 12-1238 (La. 4/5/13), 113 So.3d 175, 183 ; Falcon v. Surcouf , 17-212, pp. 14-15 (La. App. 5 Cir. 12/27/17), 236 So.3d 716. The inquiry is " 'a matter wed to the facts' and must be determined in light of facts and circumstance of each particular case." Id. To assist the fact finder in determining whether the condition of a thing creates an unreasonable risk of harm, the Louisiana Supreme Court has synthesized a risk-utility balancing test that considers four pertinent factors:
*682 1) the utility of the complained-of condition; 2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; 3) the cost of preventing the harm; and 4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature. Broussard , 113 So.3d at 184.
The second factor of the risk-utility test focuses on whether the allegedly dangerous or defective condition was obvious and apparent. Bufkin v. Felipe's La., L.L.C. , 14-288 (La. 10/15/14), 171 So.3d 851, 856. Generally, a defendant does not have a duty to protect against that which is obvious and apparent. Id. If the facts of a particular case show that the complained-of condition should be obvious to all who encounter it, then the condition may not be unreasonably dangerous, and there may be no duty owed to the plaintiff.[5] Broussard , supra ; see also , Upton v. Rouse's Enter., LLC , 15-484 (La. App. 5 Cir. 2/24/16), 186 So.3d 1195, 1200, writ denied , 16-580 (La. 5/13/16), 191 So.3d 1057. However, a person's knowledge or awareness of the risk created by the defendant's conduct should not operate as a total bar to recovery in a case where the defendant would otherwise be liable to the plaintiff. Id. at 188-89.
After review of the jury instructions and applicable law, we cannot find the trial court abused its broad discretion in formulating the unreasonable risk of harm jury instructions. As acknowledged by Defendants during the jury charge conference, the trial court's jury instructions listed the pertinent factors of the risk-utility balancing test and were effectively "a compression of Broussard ." Additionally, as proposed by Defendants, the instructions expressly mentioned the obviousness and apparentness factor of the inquiry. While Defendants argue the inclusion of the instruction that an open and obvious to all condition would have been an outcome-determinative basis to find them free from fault, that instruction would not have been in full agreement with the jurisprudence, as the condition may not have been unreasonably dangerous. See , Broussard , supra . Accordingly, we find the instructions adequately formulated by the trial judge provided the correct principles of law for the jury to apply to this case; thus, a de novo review of the record is not warranted.
Comparative Fault
Defendants allege, alternatively, that the jury clearly erred in failing to allocate any comparative fault to Ms. Woods. They argue that the jury's failure to allocate any fault to Ms. Woods goes against the clear weight of the evidence, which plainly demonstrates that Ms. Woods failed to exercise reasonable precautions for her own safety, e.g. , she was in a store approximately two weeks after undergoing rotator cuff surgery on her left shoulder picking up a case of soft drinks. Defendants contend Ms. Woods failed to remain aware of her surroundings as she stepped backwards and fell over cases of Monster Energy drinks that she had previously maneuvered around. As a result, Defendants argue that an allocation of 100% fault to Ms. Woods in bringing about her own injuries is warranted, but an allocation of 75% fault should be the minimum apportionment made based upon the record.
In opposition, Ms. Woods maintains that the jury's allocation of fault in this matter *683 was not manifestly erroneous. She avers that the jury's finding of fault is supported by a reasonable factual basis because her actions did not constitute any negligence. Ms. Woods contends that Dennis Howard, an expert safety consultant, provided uncontroverted testimony that she did nothing to contribute to her fall, and the unattended drinks on the floor constituted an unreasonably dangerous condition. She further contends that Winn-Dixie's own floor safety documents and incident report clearly stated that the drinks upon which Ms. Woods tripped constituted a tripping hazard, and the surveillance video showed Ms. Woods behaving as an ordinary shopper. Ms. Woods asserts that the evidence presented to the jury on this issue supports the jury's findings that she was free from fault and that Defendants were 100% at fault.
As indicated in the "Jury Interrogatories," the jury in this matter did not find a preponderance of the evidence proved that Ms. Woods' conduct was negligent. Moreover, the jury did not allocate any percentage of fault to Ms. Woods and, therefore, essentially found that Ms. Woods' conduct did not contribute to the cause of the accident or her resulting injuries. However, the jury allocated 50% fault to Winn-Dixie and 50% fault to Mr. Burden and Coca-Cola.
A trier of fact's findings as to percentages of fault are factual and, in the absence of clear or manifest error, must be upheld on appeal. Warden v. Richoux (La. App. 5 Cir. 3/23/10), 40 So.3d 139, 147, writ denied , 10-921 (La. 6/25/10), 38 So.3d 340. Allocation of fault is not an exact science or the search for one precise ratio, but rather an acceptable range, and any allocation by the fact finder within the range cannot be clearly wrong. Herbert v. Rapides Par. Police Jury , 06-2001 (La. 1/16/08), 974 So.2d 635, 655, rehearing denied , (La. 3/7/08). The trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages claimed. Id. , citing Watson v. State Farm and Cas. Ins. Co. , 469 So.2d 967, 974 (La. 1985).
At trial, Ms. Woods presented the testimony of Dennis Howard, who was accepted by the trial court as an expert in comprehensive general practice with experience in accident prevention in grocery store settings. Mr. Howard testified that it is an industry standard that aisles are kept clear without leaving products unattended on the floor, particularly not at a low level, because that causes a tripping hazard for the shoppers. He concluded that the cases of drinks left in the shopping aisle by Mr. Burden created a hazard and unreasonably dangerous condition if not seen and avoided by a shopper, and the positioning of the cased drinks in the pedestrian's pathway was the root cause of Ms. Woods' fall. Mr. Howard opined that Ms. Woods did nothing unexpected of the average shopper, as it is not uncommon for customers to step backwards on aisles to view merchandise. Mr. Howard further opined that Ms. Woods did not act unreasonably in any way.
In reference to Winn-Dixie, Mr. Howard testified to Winn-Dixie's safety policies regarding hazards. He stated that the policy for aisle and stack displays is a minimum of 36 in. because merchandise left at a lower height creates a tripping hazard. He attested that he did not see any evidence of Winn-Dixie inspecting the area of the incident during the time Mr. Burden left the cased drinks unattended on the floor. He further attested that Winn-Dixie should have ensured that all vendors participating in merchandising in its store were informed of its safety policies, and the Winn-Dixie store manager, Marie *684 Kingsmill, failed to effectively inspect and correct the unsafe condition created by Mr. Burden.
Ms. Kingsmill testified that, according to Winn-Dixie's floor safety policy, drinks are not to be left unattended in the aisle. She stated that Winn-Dixie team members are trained to place aisle and stack displays at a minimum of 36 in. high to avoid tripping hazards. She also stated that it is a team effort of the Winn-Dixie employees to notice any unsafe condition in the store. Ms. Kingsmill verified that after her investigation of the matter, her incident report indicated that Ms. Woods' fall was caused by an unsafe act and the leaving of the drinks on the floor unattended by Mr. Burden was the unsafe act.
After review of the evidence, we cannot find the jury was manifestly erroneous in its allocation of fault. Mr. Howard testified that Ms. Woods did not act unreasonably in any way on the day in question. Defendants did not present any evidence to refute Mr. Howard's opinion as to how a reasonable person would have reacted in that situation. Mr. Howard's testimony, coupled with Ms. Kingsmill's testimony concerning her incident report and Winn-Dixie's floor safety policies, support the jury's allocation of fault. The jury weighed the evidence presented to it and rendered its determination on the fault of each of the parties. (See , Thistlethwaite v. Gonzalez , 12-130 (La. App. 5 Cir. 12/18/12), 106 So.3d 238, 254, rehearing denied , (La. App. 5 Cir. 2/14/13), where this Court held, "As the trier of fact, the jury weighs the expert testimony, just as it weighs other evidence. The jury ha[s] great discretion to accept or reject both expert and lay testimony.") Furthermore, we note that the jury was adequately instructed by the trial judge on comparative fault and the standard for possibly finding Ms. Woods at fault. Accordingly, we find the jury was not erroneous in determining Ms. Woods was not at fault for her fall.
General Damages Award
Defendants allege the jury's total award of $620,000 in general damages is abusively high and is clearly excessive under the facts of this case. They argue that other than shopping and playing softball, which she already could not play because of her previously torn rotator cuff, Ms. Woods could not identify any specific activities from which she was prevented from engaging. They also argue that Ms. Woods testified that her shoulder and neck surgeries were successful and had good outcomes. Under those conditions, Defendants contend that a $620,000 general damages award was clearly an abuse of discretion.
Ms. Woods maintains the jury award is not abusively high. She avers the jury was presented with ample evidence of her two separate surgeries, a second arthroscopic rotator cuff repair and a three level cervical fusion in her cervical spine, and the multiple ways the accident-resulting in injuries and extensive treatment-have affected her life. She further avers that her treating physicians testified to the grueling nature of the surgeries and the permanent condition she will live with for the rest of her life. As such, Ms. Woods asserts that the jury's award is supported by the evidence presented at trial and should be affirmed by this Court.
"General damages are those which may not be fixed with pecuniary exactitude; instead, they 'involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms.' " Bellard v. Am. Cent. Ins. Co. , 07-1335 (La. 4/18/08), 980 So.2d 654, 674, quoting Duncan v. Kansas City Southern Railway Co. , 00-66 (La. 10/30/00), 773 So.2d 670. The assessment of *685 the appropriate amount of damages, by a trial judge or jury, is a determination of fact, one entitled to great deference on review. Joseph v. Neth. Ins. Co. , 15-549 (La. App. 5 Cir. 2/24/16), 187 So.3d 517, 519, citing Wainwright v. Fontenot , 00-492 (La. 10/17/00), 774 So.2d 70, 74. The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Id.
Before a court of appeal can disturb an award made by a fact finder, the record must clearly reveal that the trier of fact abused its discretion in making its award. Thibodeaux v. Donnell , 16-570 (La. 1/20/17), 219 So.3d 274, 278, citing Coco v. Winston Industries, Inc. , 341 So.2d 332, 332 (La. 1976). Only after making the finding that the record supports the notion that the lower court abused its great discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point reasonably within the discretion afforded that court. Id. (See also , Youn v. Maritime Overseas Corp. , 623 So.2d 1257, 1260 (La. 1993), where the Louisiana Supreme Court found, "Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion.") It is never appropriate for a court of appeal, having found that the trial court has abused its discretion, to simply decide what it considers an appropriate award on the basis of the evidence. Thibodeaux , supra .
At trial, Ms. Woods testified that she was 59 years old at the time of the incident. Although she had back, shoulder, and neck pain prior to the incident that was either sporadic or resolved, Ms. Woods testified that the pain worsened after her fall in the store. After the incident, Ms. Woods had to undergo a second arthroscopic rotator cuff repair on her left shoulder for the severe pain she experienced in that shoulder. She received an injection in her neck to relieve her neck pain, but the injection did not resolve the pain and she had to have surgery. She had the three level cervical fusion performed to resolve her pain and had to wear a collar for some time. However, Ms. Woods stated that she still has pain in her neck. As a result of the neck surgery, Ms. Woods stated that she developed a scar on the incision area that causes her pain. The scar makes it uncomfortable for her to eat and talk, and she has the sensation that something is always lodged in her throat. Ms. Woods also stated that the complications from her Bell's palsy worsened after the surgery because it affected the nerves in her face.
Ms. Woods testified that the cervical fusion aged her, and it was a very hard recovery for her. She maintained that her entire lifestyle has been changed due to her surgery. She loved to shop, play softball, and attend church, but she is hindered from being active. Ms. Woods further testified that the injuries resulting from the fall have affected her sleep. She sleeps better in a lounge chair and had not slept in her bed in a long time.
Dr. Everett Robert was admitted as an expert in the field of neurosurgery. He testified that, during the surgery he performed on Ms. Woods' spine, an incision being made in her neck; her carotid artery was moved outside of her neck; and her trachea and esophagus were moved in the other direction. The surgery was complicated because of Ms. Woods' huge jugular vein, which Dr. Robert had to work around. As a result of the incision made on Ms. Woods' neck, a keloidformed, which can cause pain. Dr. Robert testified that *686 Ms. Woods' neck is never going to be "normal." He confirmed that, although the surgery eliminated the radicular pain Ms. Woods was experiencing, she was left with residual neck pain and may have to live with that pain for the rest of her life. Dr. Robert opined that Ms. Woods' fall in Winn-Dixie not only caused her neck pain but also caused the onset of the right upper-extremity pain, an exacerbation to her underlying back condition, and the need for surgery.
At the conclusion of the trial, the jury in this matter awarded the following general damages to Ms. Woods:
Past pain and suffering $250,000 Future pain and suffering $50,000 Past mental/emotional anguish $200,000 Future mental/emotional anguish $50,000 Loss of enjoyment of life $70,000
After review, we find the record does not clearly reveal that the jury in this matter abused its discretion in determining the amounts of the general damages. Ms. Woods' testimony explained the complications and lifestyle changes she has endured from the injuries and surgeries resulting from her fall in Winn-Dixie. She expressed the amount of pain she continues to experience and the effects of the pain on her lifestyle. Dr. Robert's testimony confirmed Ms. Woods' complaints of neck pain and gave the bleak prognosis that she may have to live with the pain for the rest of her life. Therefore, based upon all of the evidence presented, we cannot find the jury abused its discretion in its award of general damages to Ms. Woods.
DECREE
For the foregoing reasons, we affirm the judgment of the trial court that ruled in favor of Plaintiff/Appellee, Gilda Woods, and against Appellants/Defendants, Winn-Dixie Montgomery, L.L.C., the Coca-Cola Company a.k.a. Louisiana Coca-Cola Bottling Company a.k.a. Coca-Cola Refreshments USA, Inc., and Jonathan Burden. Defendants are assessed the costs of this appeal.
AFFIRMED

In this position, Mr. Burden was responsible for stocking store shelves with various Coca-Cola brand products.

The cases of drinks were left near the shelf but were not flush against it.

Winn-Dixie's surveillance system recorded the entire incident.

At the conclusion of the jury charge conference, defense counsel acknowledge the trial judge's efforts to reach a compromise in effectively charging the jury by stating:
Your Honor, I, I think the charges we proposed are more appropriate, but, but I'm satisfied that at least that the compromise gets us closer to there...I can make my objection for the Record, but I-I think your Honor's suggested charge, at least, makes the point of open and obvious.

The reasoning behind this general principle is that, when a condition is open and obvious to all who encounter it, "[t]he probability of injury is low and the thing's utility may outweigh the risks caused by its defective condition." Broussard , 113 So.3d at 184.