GUIDRY, J.
IsA parish home inspector appeals a summary judgment dismissing his claim for damages against several defendants for *845 injuries he sustained while attempting to enter a home under construction. We affirm.
FACTS AND PROCEDURAL HISTORY
On August 14, 2008, John W. Sasser, III, a building inspector for the Iberville Parish Council, fell when a set of temporary steps became detached from the house frame while he was ascending them to enter a home being constructed at 1320 Agatha Road in Sunshine, Louisiana. He sustained injuries to his right shoulder, right knee and left leg as a result of the fall.
On August 11, 2009, Mr. Sasser and his wife, M. Diane Denais Sasser (collectively “plaintiffs”), filed suit against Timothy J. Wintz, as owner of the home under construction; KRC Construction, LLC (“KRC”), as general contractor; American Safety Indemnity Company (“ASIC”), as the liability insurer of KRC; Kevin Blanchard, as framing subcontractor; and Canal Indemnity Company, as the liability insurer of Mr. Blanchard. The Iberville Parish Council later intervened in the proceedings to assert a claim for reimbursement of workers’ compensation benefits paid to Mr. Sasser.) Mr. Wintz, KRC and ASIC all denied the claims asserted by the plaintiffs and the intervenor and later filed separate motions for summary judgment seeking dismissal of all the claims asserted against them by the plaintiffs and interve-nor. In turn, the plaintiffs and intervenor filed a joint motion for summary judgment on the issues of whether Mr. Wintz maintained operational control over the construction site, whether Mr. Blanchard was an employee of KRC, and whether the ASIC policy issued to KRC provided coverage for the accident
The trial court held a hearing on all the various motions for summary judgment jointly, following which it granted summary judgment in favor of Mr. |4Wintz, KRC and ASIC, dismissing the claims of the plaintiffs and the intervenor asserted against those defendants. The trial court denied the plaintiffs’ and intervenor’s joint motion for summary judgment. The plaintiffs and intervenor appeal, contending that the trial court erred in granting summary judgment in favor of Mr. Wintz, KRC and ASIC.
STANDARD OF REVIEW
A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). On a motion for summary judgment, the burden of proof is on the mover. If the moving party will not bear the burden of proof at trial on the matter, that party’s burden on a motion for summary judgment is to point out an absence of factual support for one or more essential elements of the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966 C(2); Robles v. ExxonMobile, 02-0854, p. 4 (La.App. 1st Cir.3/28/03), 844 So.2d 339, 341. An appellate court’s review of a summary judgment is de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. R.G. Claitor’s Realty v. Rigell, 06-1629, p. 4 (La.App. 1st Cir.5/4/07), 961 So.2d 469, 471-472, writ denied, 07-1214 (La.9/21/07), 964 So.2d 340.
*846 1,DISCUSSION
The accident from which this lawsuit stems was caused by the detachment of a set of temporary steps from the structure of a home owned by Mr. Wintz. At the time of the accident, the home was under construction. The legal basis for liability of a homeowner for injuries caused by a defect in the home is typically premised on the following Civil Code articles:
Art. 2317. Acts of others and of things in custody
We are responsible, not only for the damage occasioned by our own act, but for ... the things which we have in our custody. This, however, is to be understood with the following modifications.
Art. 2317.1. Damage caused by ruin, vice, or defect in things
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Art. 2322. Damage caused by ruin of building
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
However, the owner of a building under construction or renovation generally does not have custody for purposes of liability based on the foregoing civil code articles. An exception to that rule occurs when the owner exercises operational control over the contractor’s methods of operation or gives express or implied authorization to unsafe practices. See Young v. City of Plaquemine, 02-0280, pp. 2-3 (La.App. 1st Cir.5/10/02), 818 So.2d 898, 899, writ denied, 02-1601 (Lag/30/02),6 825 So.2d 1196. Thus, in order to prevail on their claims against the homeowner, the plaintiffs and the Intervenor would bear the burden of having to prove that Mr. Wintz exercised such operational control over the subcontractor who installed the temporary steps at his home.
It is undisputed that the temporary steps at issue were attached to Mr. Wintz’s home by Mr. Blanchard, the framing subcontractor hired by KRC. So in order to meet his burden of proof on summary judgment, Mr. Wintz had to point out the lack of factual support for an essential element of the plaintiffs’ and intervenor’s claim against him, namely that they would be unable to prove that he exercised operational control over the work performed by Mr. Blanchard.
In support of the motion for summary judgment, Mr. Wintz submitted excerpts from his deposition and the depositions of Kenny Chatelain, the owner of KRC, Mr. Blanchard, Mr. Sasser and Brittni Mancu-so.[1] In his deposition, Mr. Wintz testified *847 that he hired KRC to be the general contractor in charge of the construction of his home, that he did not select Mr. Blanchard as the framing subcontractor, and that he left the selection of subcontractors to the discretion of Mr. Chatelain. Mr. Wintz testified that he did not supply any tools to any of the subcontractors and that Mr. Chatelain supervised the subcontractors. Mr. Chatelain likewise testified that he “mostly managed” construction of the home and that he “typically” addressed any issues with the subcontractors. Mr. Blanchard acknowledged in his deposition that he constructed the temporary steps from which Mr. Sasser fell and that KRC hired and paid him as the framing subcontractor for the job. He also stated the following in response to questioning:
Q. Did Mr. Wintz in any way tell you how to build the steps?
A. No.
17Q. Did he instruct any of your employees or the guys that worked for you how to build those steps?
A. No, ma’am.
Q. Did he supply any tools to you?
A. No ma’am
Q. With respect to the construction of those steps, did you answer to him in any way?
A. No.
Q. Did he ever complain to you about the steps?
A. No.
Further, Mr. Sasser, who was working in his capacity as a building inspector at the time of the accident, stated that although he alleged in his petition that Mr. Wintz was acting as his own general contractor, if Mr. Chatelain “pulled” or obtained the permits for the construction of the home, then Mr. Sasser conceded that Mr. Chatelain was the general contractor. Mr. Sasser also admitted that he did not have any information or evidence to prove that Mr. Wintz built the steps at issue. Finally, in her deposition, Mrs. Mancuso was asked to review several documents kept in the ordinary course of her work in the permit office, based on which she testified that the documents showed that KRC was the general contractor for the construction of Mr. Wintz’s home.
Therefore, based on the evidence presented, Mr. Wintz clearly pointed out a lack of factual support for the required showing that he exercised operational control over Mr. Blanchard or over Mr. Blanchard’s work in constructing the temporary steps. Nevertheless, in opposing Mr. Wintz’s motion for summary judgment, the plaintiffs and the intervenor contend that Mr. Chatelain’s testimony that he “mostly managed” and that he “typically” addressed issues with the subcontractors, in addition to evidence introduced in conjunction with KRC’s motion for summary judgment that showed that Mr. Wintz contracted with KRC to | ^personally perform and be responsible for several specific items of work on the project, including all the electrical work, is enough to create a genuine issue of material fact as to whether Mr. Wintz exercised operational control over Mr. Blanchard and/or the construction of the steps. We disagree.
While Mr. Chatelain’s statements indicate that KRC may not have exercised absolute operational control over every aspect of the construction of Mr. Wintz’s home, Mr. Chatelain’s statements cannot be held to constitute the proof necessary to affirmatively show that Mr. Wintz exercised operational control over Mr. Blanchard or the construction of the temporary *848 steps in light of the direct evidence establishing that Mr. Wintz did not exercise such operational control. His statements, at the most, may indicate that Mr. Wintz or someone else may have exercised some operational control over some aspects of the construction other than over Mr. Blanchard or the construction of the temporary steps. Likewise, although Mr. Wintz retained responsibility for several elements of construction under his contract with KRC, none of the elements retained specifically mention construction of the steps for the home, and in light of the specific evidence presented that he did not retain responsibility or exercise operational control over construction of the steps, we find no error in the trial court’s conclusion that Mr. Wintz is entitled to summary judgment.
The trial court granted summary judgment in favor of KRC on the basis that Mr. Blanchard was an independent contractor; and not an employee of KRC. As discussed by this court in Alexander v. Lowes Companies, 96-2169, pp. 5-6 (La.App. 1st Cir.9/19/97), 701 So.2d 239, 242 (footnotes omitted):
The Louisiana Civil Code provides in article 2320 that, “Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.” However, this responsibility attaches only when the employer might have prevented the act that caused the damage, and did not do so. Under the law, a principal is not liable for the offenses an independent contractor commits in the course of | ^performing his contractual duties. However, this rule is subject to two exceptions. First, the principal may not escape liability for injuries resulting from the contractor performing ultra-hazardous work. Secondly, the principal cannot escape liability when it reserves the right to supervise or control the work of the independent contractor, or gives express or implied authorization to an unsafe practice.
 As discussed in Roca v. Security National Properties—Louisiana Limited Partnership, 11-1188, pp. 4-5 (La.App. 1st Cir.2/10/12), 102 So.3d 778, 781 the factors to consider in determining whether an independent contractor relationship exists are as follows:
1. A valid contract exists between the parties;
2. The work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it;
3. The contract calls for specific piecework as a unit to be done according to the contractor’s own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered;
4. There is a specific price for the overall undertaking; and
5. The duration of the work is for a specific time and -not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.
In other words, to determine whether someone is an independent contractor, one must look at his degree of control over the work. While the principal has the ability to oversee the results of the contractor’s work, the principal in no way influences the manner in which the contractor does the work. Conversely, an employer has a great amount of control over an employee’s work, such as the nature of the task and where it is to be performed, setting the wage, and the power of dismissal. [Citations omitted.]
To determine whether an employment relationship exists, the jurisprudence of this *849 state has uniformly held that the most important element to be considered is the right of control and supervision over an individual. Parmer v. Suse, 94-2200, p. 4 (La.App. 1st Cir.6/23/95), 657 So.2d 666, 668, writ denied, 95-1853 (La.11/3/95), 662 So.2d 10.
Similarly, to the extent that Mr. Blanchard is an independent contractor and not an employee, as the general contractor, KRC cannot be held liable for the work | j nperformed by the subcontractor, Mr. Blanchard, in the absence of proof that the work performed was intrinsically or inherently dangerous or that KRC reserved the right to supervise or control the work or gave express or implied authorization for an unsafe practice. See Villaronga v. Gelpi Partnership Number 3, 536 So.2d 1307, 1310-11 (La.App. 5th Cir.1988), writs denied, 540 So.2d 327, 329 (La.1989).
There is no question that the work of installing the temporary steps was not intrinsically or inherently dangerous. Moreover, in support of its motion for summary judgment, KRC also offered excerpts from the depositions of Mr. Chatelain, Mr. Blanchard, and Mr. Wintz. According to his deposition, Mr. Chatelain testified that the plans and specifications for the home being constructed were furnished by Mr. Wintz. He stated that he was the only employee of KRC, and the only work he performed was to take the plans and specifications provided by the homeowner, and as a general contractor, manage the construction by hiring subcontractors to go out and do the day-to-day business of building the home. Mr. Chatelain stated that he did not supply anything to the subcontractors, but he relied on the subcontractors he hired to do their work correctly, in a good workmanlike manner. He also stated that Mr. Blanchard was a licensed contractor in his own right.
Mr. Blanchard acknowledged that he maintained workers’ compensation and general liability insurance to cover him as a framer while working for KRC. He testified that he was paid by KRC for the framing work performed on Mr. Wintz’s home. He also stated that neither he nor his employees were supervised by Mr. Chatelain while performing the framing work and that he used his own tools in performing the work. Although Mr. Blanchard employed two men to assist him in doing the framing work, he testified that he actually constructed the temporary steps, along with one of his employees, and that he was not supervised by KRC lnwhile building the steps. Mr. Wintz stated that he worked as the electrical subcontractor on the construction of his home, and he likewise testified that he did not see KRC supply any tools or exercise hands-on control while working on the construction project.
In opposing KRC’s motion for summary judgment, the plaintiffs and intervenor argue that a genuine issue of material fact exists regarding whether a verbal contract existed between KRC and Mr. Blanchard. Mr. Chatelain expressly stated that KRC had a verbal contract with Mr. Blanchard. Mr. Blanchard acknowledged that he had a contract with KRC, but expressly denied having a written contract with KRC. In his deposition, Mr. Blanchard described the relationship between him and KRC for the construction of Mr. Wintz’s home as follows:
Q. ... Tell me how — it’s my understanding that when, say, Mr. Wintz wants KRC to build a house, he gives him a set of plans and specs and [Mr. Chatelain] gives him, a bid; is that correct?
A. We’ll look at them together, and I’ll give him what I charge him to do my part of it.
*850 [[Image here]]
Q. You and [Mr. Chatelain] would look at these plans and specs together, and then you would give him your price, lump-sum price, to do, for example, in this case, the framing?
A. Yes, sir.
Q. Okay. And you would look at those specs and give him that estimate?
A. Yes, sir.
Q. And then your job would be to perform the work that you were to do in compliance with those plans and specs; is that correct?
A. Yes.
Q. In other words, [Mr. Chatelain] didn’t supervise you day to day on the job; you did the job yourself with your employees; is that correct?
|i2A. That’s correct.
[[Image here]]
Q. And then the check that I showed you made out to Kevin Blanchard from KRC is the same amount, is it not?
A. Yes, sir. Yes.
Q. Out of that, you would take care of your employees; is that correct?
A. That’s correct.
Q. Did you actually have other employees on that framing job?
A. Yes, sir.
[[Image here]]
Q. ... you would be responsible for paying them?
A. Yes, sir.
Q. You would have complete supervision and control of their actions out on the job, would you not?
A. That’s correct.
Q. Mr. Chatelain would not have supervision and control over them?
A. No, sir.
Q. In other words, you were going to do the framing according to the plans and specs, and KRC was going to pay you $14,050 to do that?
A. That’s right.
Q. Okay, you used your own tools out on the job site?
A. Yes, sir.
Q. KRC didn’t supply any of your tools?
A. No, sir.
A copy of a check in the amount of $14,050.00, payable to Kevin Blanchard, was also attached to KRC’s motion for summary judgment.
11sBased on this evidence, we find that KRC adequately pointed out the lack of factual support to prove that KRC supervised or controlled the work of Mr. Blanchard, or had the right to do so, and the plaintiffs and intervenor failed to produce evidence to refute this showing. Thus, we find the trial court did not err in granting summary judgment in favor of KRC.
As for ASIC, the basis for its motion for summary judgment was a lack of coverage. ASIC issued a commercial general liability policy to KRC with a “Contractors Special Condition” endorsement. The endorsement expressly modified the commercial general liability coverage to provide:
As a condition precedent to coverage for any claim or injury or -damage based, in whole or in part, upon work performed by independent contractors, the insured must have, prior to the start of work and the date of the “occurrence” giving rise to the claim or “suit:”
(1) received a written indemnity agreement from the independent contractor holding the insured harmless for all liabilities, including costs of de *851 fense, arising from the work of the independent contractor;
(2) obtained certificates of insurance from the independent- contractor indicating that the insured is named as an additional insured and that coverage is maintained with minimum limits of $500,000.00 per occurrence;
In the excerpts from Mr. Chatelain’s deposition that ASIC offered in support of its motion for summary judgment, Mr. Chatelain testified that he did not sign a written contract with Mr. Blanchard. He explained that his contract with Mr. Blanchard was verbal and there was no written contract providing indemnity, to hold harmless, or to defend KRC as a result of any negligent work performed by Mr. Blanchard. Moreover, Mr. Chatelain stated that while he required Mr. Blanchard to furnish him with a certificate of the insurance, the coverage was for $300,000.00. Mr. Blanchard also acknowledged, in the portions of his deposition that were submitted, that there was no written contract with KRC and that the | ^general liability coverage he obtained provided only $300,000.00 for each occurrence.
The initial burden to establish that a claim falls within the policy coverage is on the plaintiff. Evins v. Louisiana Farm Bureau Mutual Insurance Company, 04-0282, p. 3 (La.App. 1st Cir.2/11/05), 907 So.2d 733, 734. In opposition to ASIC’s motion for summary judgment, the plaintiffs and intervenor simply alleged that Mr. Blanchard should be held to be an employee so that the aforementioned limitations of coverage for an independent contractors would not apply. On appeal, they acknowledge that KRC “failed to receive any sort of indemnity agreement and failed to obtain $500,000.00 in insurance from [the] subcontractor.”
However, if the wording of the policy is clear and expresses the parties’ intent, the policy must be enforced as written. This rule is applicable even to policy provisions that limit the insurer’s liability or place restrictions on policy obligations. McQuirter v. Rotolo, 11-0188, p. 8 (La.App. 1st Cir.9/14/11), 77 So.3d 76, 80. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions on the policy obligations they contractually assume. McDonald v. American Family Life Assurance Company of Columbus, 10-1873, p. 6 (La.App. 1st Cir.7/27/11), 70 So.3d 1086, 1090. Accordingly, as the conditions for coverage under the ASIC policy clearly were not met, we find that the trial court did not err in granting summary judgment in favor of ASIC.
CONCLUSION
Considering the foregoing, we affirm the judgment of the trial court. All costs of this appeal are to be borne by the appellants, John W. Sasser, III, M. Diane De-nais Sasser and the Iberville Parish Council.
AFFIRMED.

. Based on the excerpts from her testimony and the statement contained in Mr. Wintz's *847 memorandum in support of his motion for summary judgment, it is assumed that Ms. Mancuso is employed in the permit office for Iberville Parish.